IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

EMMANUEL O. SOYOOLA,

        Plaintiff,

v.                              CIVIL ACTION NO.   2:13-cv-08907

OCEANUS INSURANCE COMPANY,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the court is the defendant Oceanus Insurance Company's ("Oceanus") Motion for Summary Judgment [Docket 117]. This insurance dispute arises from a medical malpractice action filed against Dr. Emmanuel O. Soyoola for his alleged negligent delivery of Jamie and Tracy McNeely's baby. The policy at issue is a claims-made-and-reported policy. The policy only covers claims asserted against the insured and reported to the insurer during the policy period. For the reasons discussed below, I conclude that Dr. Soyoola has failed to present evidence that a claim was made against him during the policy period. Accordingly, Oceanus's motion is **GRANTED**.

    **I.**    **Background**

    Dr. Soyoola practiced as an obstetrician and gynecologist in Logan County, West Virginia. (Second Am. Compl. [Docket 115] ¶ 1). In 2005, Dr. Soyoola obtained medical malpractice insurance from Oceanus to cover his practice in West Virginia and Georgia. (*See* Dr. Soyoola Aff. [Docket 123-1] ¶ 6; Ex. B, Policy [Docket 119[1]], at 10). The policy at issue is identified as Policy

---

[1] This docket entry contains multiple exhibits, each with their own pagination. The pages cited for this docket entry reflect the pagination of the entire entry rather than the individual exhibits.

Number 07-2006-015 ("the Policy"). (Ex. B, Policy [Docket 119], at 10). The Policy had a limit of $1 million per claim. (*Id.*).

The first page of the Policy explicitly states:

> THIS IS A CLAIMS MADE POLICY. The coverage of this policy is limited for only those claims that *are first made against the insured and reported to the Company while the policy is in force.* Please review the policy.

(*Id.* at 11 (emphasis added)). The Policy continues to state the following:

> *The coverage provided in this Policy is written on a "claims made" basis.* Coverage is limited to liability for those claims which are a result of medical incidents occurring subsequent to the retroactive date [August 1, 2004] stated on the Declarations Page and defined in the Policy. *Claims must be first made against the Named Insured and reported to the Company during the policy period.*
>
> . . . .
>
> Failure to comply with any conditions of this contract may give the Company the right to deny coverage, cancel or rescind this Policy.

(*Id.* at 12 (emphasis added)).

The Policy defines "claim" as "the sum the insurer is obligated to pay on behalf of the insured which the insured becomes legally obligated to pay as damages because of a 'medical incident' or 'suit' seeking those damages from the insured." (*Id.* at 14). The Policy does not define "claim" in the context of a claim asserted against the insured.

The Policy also outlines certain duties and obligations that arise if a written demand for money or suit is made against the insured:

> NAMED INSURED'S DUTIES IN THE EVENT OF A CLAIM
>
> If there is a written demand for money and/or suit involving the Named Insured or any other protected person under this Policy, the Named Insured must comply with the following or the Company will have no duty or obligation to defend or indemnify the Named Insured:

2

> The insured must tell the Company what happened, as soon as possible, even though no claim has been made. The Named Insured must provide the Company with full disclosure. If the Named Insured or any other person covered under this Policy is aware of a potentially compensable event, they must notify the Company in writing with the following information, including but not limited to:
>
> a. Date time and place of the event, and
> b. the persons involved, and
> c. the specific nature of the incident or events, and
> d. the type of claim that may result as well as the services that were provided.

(*Id.* at 16).

In August 2006, Oceanus renewed and reissued the Policy. (*See* Dr. Soyoola Aff. [Docket 123-1] ¶ 9). Prior to the renewal, Dr. Soyoola alleges that he received a thank you note and photographs of the baby from the McNeelys. (*See* Pl.'s Resps. and Objections to Def.'s Statement of Material Fact ("Pl.'s Resps. to Facts") [Docket 122] ¶¶ 19, 24). The thank you note states "To: Dr. Soyoola[,] Thanks for everything you did to save my little boy[']s life[,] From: Jamie & Tracy McNeely." (Thank You Note and Photographs [Docket 123-9]). The note and the photographs are undated. Dr. Soyoola asserts he transmitted the note and the photographs to Fred Seilkop with Healthcare Professionals Services, Inc. ('HPSI"), who Dr. Soyoola alleges was Oceanus's insurance broker. (*See* Pl.'s Resps. to Facts [Docket 122] ¶¶ 19, 24). Dr. Soyoola also claims he verbally notified Mr. Seilkop of the claim prior to August 2006. (*See* Dr. Soyoola Dep. [Docket 123-5], at 166:20-168:11).

On August 1, 2009, Oceanus terminated the Policy and issued Dr. Soyoola tail coverage of $250,000. (*See* Second Am. Compl. [Docket 115] ¶ 9). On December 15, 2009, Dr. Soyoola's

counsel in another medical malpractice case received an email from the McNeely's attorney. (*See* Ex. J, Email from Paul Farrell to Sam Fox (Dec. 15, 2009) [Docket 119], at 58). The email stated:

> My law firm has been retained by Jamie L. McNeely to pursue a medical malpractice claim against Emmanuel Soyoola, MD et al. arising out of the traumatic birth of Trace McNeely (DOB: 11.10.2005) at Logan Regional Medical Center.
>
> The medical records indicate at 1410 hours "VE-unable to reach inner os. to verify presenting part." At 1840 hours a vaginal exam indicated 60%/4/-1 followed by artificial rupture of membranes. A STAT c-section was called at 1846 hours due to a cord prolapse. Mrs. McNeely was brought to the operating room at 1857 hours. Baby Trace was delivered at 1914 hours. Baby Trace was born with APGARS of 0-4-7. Arterial blood gas was reported at pH6.99 with a Base Excess -21.2L. Seizure activity was noted at 2030 hours. Baby Trace was placed on a ventilator at 2130 hours. Baby Trace was transferred to the University of Kentucky Medical Center Neonatology unit and diagnosed with hypoxic ischemic encephalopathy.
>
> Please advise to whom the Notice of Claim and Certificate of Merit should be directed.

(*Id.* at 58). The next day, the lawyer sent an email to Oceanus notifying it of the claim. (*See* Ex. K, Email from Sam Fox to Ron Kurtz (Dec. 16, 2009) [Docket 119], at 60). The lawyer indicated in the email that he had informed Dr. Soyoola of the claim. (*See id.*).

On April 4, 2013, Dr. Soyoola sued Oceanus in the Circuit Court of Kanawha County. (*See* Compl. [Docket 1-2]). The suit was removed to this court on April 24, 2013. (*See* Notice of Removal [Docket 1]). On December 11, 2013, I granted Dr. Soyoola leave to amend his complaint. (*See* Order [Docket 60]). I permitted Dr. Soyoola to assert five claims based on the Policy: (1) breach of contract, (2) unfair trade practices, (3) false and deceptive practices, (4) fraud, and (5) punitive damages. (*See id.*). After several attempts to file an amended complaint that conformed to the December 11, 2013 Order, Dr. Soyoola moved to amend his complaint again on April 23, 2014, which I granted. (*See* Order [Docket 114]). Oceanus now moves for summary judgment,

primarily arguing that coverage does not exist because Dr. Soyoola did not adhere to the Policy's notice provisions. Dr. Soyoola responds that he gave Oceanus notice of the McNeely claim, through Mr. Seilkop, before August 2006. As I will discuss below, Dr. Soyoola has failed to present evidence that a claim was asserted against him during the policy period and therefore no coverage exists. Because Dr. Soyoola's claims depended on the existence of coverage, his claims fail.

## II. Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise,

conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

### III. Discussion

#### A. Maturity of the Motion

Dr. Soyoola argues that summary judgment should be denied as premature due to a lack of adequate discovery. Oceanus has moved to stay discovery two times pending the resolution of its motion to dismiss and its motion to strike, for sanctions, and/or judgment on the pleadings. I denied Oceanus's motion to dismiss as moot because I granted Dr. Soyoola's motion for leave to amend. I also granted Oceanus's motion to strike and thus denied the motion for judgment on the pleadings as moot.

No depositions have been conducted in this case.[2] According to Dr. Soyoola, only two written discovery responses have been served and answered. Oceanus contends that it has provided Dr. Soyoola with voluminous discovery. (*See* Def.'s Resp. to Emmanuel O. Soyoola's Mot. to Compel Disc. Resp. [Docket 55], at 5-6). In his briefing, Dr. Soyoola states that he "cannot know precisely what Oceanus did to investigate his claim to the $1 million coverage. Likewise, Oceanus has refused to comply with discovery by failing to produce documents responsive to Dr. Soyoola's requests, including Oceanus's underwriting file for Dr. Soyoola's coverages[.]" (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. [Docket 123], at 4 n.2). In discussing the thank you note that he allegedly transmitted to HPSI, Dr. Soyoola states that "as HPSI refuses to produce Mr.

---

[2] However, the record includes Dr. Soyoola's deposition that was taken in the underlying medical malpractice action. (*See generally* Dr. Soyoola Dep. [Docket 123-5]).

6

Seilkop for deposition or production of all of HPSI's records regarding Dr. Soyoola, it's possible other relevant written documents exist, which Dr. Soyoola hasn't been able to access because of an alleged stay of discovery urged by Oceanus and its counsel." (*See* Pl.'s Resps. to Facts [Docket 122] ¶ 19).

If I delayed summary judgment and permitted additional discovery, it is unclear what evidence Dr. Soyoola could obtain in furtherance of his claims. For example, deposing Mr. Seilkop might reveal that he received Dr. Soyoola's verbal notice of his alleged malpractice. It might also show that Mr. Seilkop received the thank you note and photographs. Access to HPSI's records might reveal that they had received a report of a claim from Dr. Soyoola. However, this additional evidence would not show whether a claim had been asserted against Dr. Soyoola. To obtain coverage, a claim had to be asserted against Dr. Soyoola and Dr. Soyoola had to report that claim to Oceanus during the Policy period. As I explain more fully below, a claim requires a demand for relief or damages. Dr. Soyoola's belief that he may have committed malpractice and his report of this belief to Mr. Seilkop and HPSI does not support his claim for coverage. The policy at issue is not an occurrence policy but a claims-made-and-reported policy. The mere fact that malpractice occurred and that the insured was aware of his own malpractice is insufficient to trigger coverage. *See generally* Lee R. Russ, Thomas F. Segalla, 13 *Couch on Insurance* § 186:13 (3d ed. 2005) ("'[C]laims made' policies[] *cover only 'claims' that are 'made' against the insured during the policy period, regardless of when the circumstances giving rise to the claim occurred*, while others (called 'occurrence' policies) cover claims based on activity occurring during the policy period, regardless of when the claim is actually asserted, and *still others narrow their*

*coverage to claims that both are made during the policy period and which are based on circumstances occurring during that period.*") (emphasis added)).

Moreover, although Dr. Soyoola joined in a motion to extend discovery until I ruled on certain dispositive motions, he has not filed a Rule 56(d) affidavit containing "specified reasons" as to why summary judgment should be deferred. Fed. R. Civ. P. 56(d). The Fourth Circuit places "great weight" on Rule 56(d) affidavits. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996). In *Evans*, the Fourth Circuit stated that "failure to file an affidavit under Rule 56[d] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Id.* (quotations omitted). Therefore, I **FIND** that Oceanus' motion for summary judgment is not premature.

### B. Breach of Contract

Dr. Soyoola alleges that Oceanus breached its insurance contract by failing to provide $1 million in coverage for the McNeely claim, even though he timely reported the claim during the Policy period. In West Virginia, "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Marlin v. Wetzel Cnty. Bd. of Educ.*, 569 S.E.2d 462, 464 (W. Va. 2002) (quoting Syl. Pt. 3, Pt. 1, *Tennant v. Smallwood*, 568 S.E.2d 10, 11 (W. Va. 2001)). "Language in an insurance policy should be given its plain, ordinary meaning." Syl. Pt. 1, *Mylan Labs., Inc. v. Am. Motorists Ins. Co.*, 700 S.E.2d 518, 520 (W. Va. 2010) (quoting Syl. Pt. 1, *Soliva v. Shand, Morahan & Co.*, 345 S.E.2d 33, 33 (W. Va. 1986), *overruled on other grounds by Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (W. Va. 1987)). "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."

Syl. Pt. 2, *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 486 (W. Va. 2004). However, when "the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. Pt. 3, *id.* When an insurance provision is ambiguous, "it is construed against the drafter, especially when dealing with exceptions and words of limitation." *Boggs v. Camden-Clark Mem'l Hosp. Corp.*, 693 S.E.2d 53, 58 (W. Va. 2010) (quoting *Payne v. Weston*, 466 S.E.2d 161, 166 (W. Va. 1995)).

The unambiguous language of the Policy establishes that it is a claims-made-and-reported policy. "[I]n claims-made-and-reported policies, coverage is triggered only where the third-party claim is asserted against the policyholder during the policy period *and* the policyholder notifies the carrier of the claim during the policy period." Franklin D. Cordell, 3 *New Appleman on Insurance Law Library Edition* § 20.01[7][b] (2012) (emphasis in original). Although the Supreme Court of Appeals of West Virginia has not addressed claims-made-and-reported policies in a published decision, the court has acknowledged that these policies "include the additional requirement that the insurer be notified of the claim within the policy period." *Lindsay v. Attorneys Liab. Prot. Soc., Inc.*, No. 11-1651, 2013 WL 1776465, at *2 n.2 (W. Va. Apr. 25, 2013) (memorandum decision) (finding no coverage existed because insured failed to report claim to insurer during the same policy period in which the claim was made against the insured). As other courts have noted, "the purpose of a claims made and reported policy [is] to 'allow the insurer to more accurately fix its reserves for future liabilities and compute premiums with greater certainty.'" *Lexington Ins. Co. v. Integrity Land Title Co.*, 852 F. Supp. 2d 1119, 1133 (E.D. Mo. 2012) (quoting *H & R Block v. Am. Int'l Specialty Lines Ins. Co.*, 546 F.3d 937, 942 (8th Cir. 2008)). *See generally* 3 *New Appleman*

*on Insurance Law Library Edition* § 20.01[7][a] ("Claims-made policy forms were developed in part to allow insurers to know sooner and with greater certainty whether and to what extent a policy will have to respond to claims.").

Here, the Policy requires that a claim be asserted against the insured *and* that the insured report this claim to the insurer during the Policy period. As discussed above, the retroactive date of the Policy was August 1, 2004 and the Policy was terminated on August 1, 2009. (*See* Policy [Docket 119], at 10; Second Am. Compl. [Docket 115] ¶ 9). Therefore, for coverage to exist for the McNeely claim, the McNeelys must have asserted a claim against Dr. Soyoola and Dr. Soyoola must have reported that claim to Oceanus between August 1, 2004 and August 1, 2009.

Although the Policy does not define when a claim is asserted against an insured, the lack of a definition does not render the Policy ambiguous. The Supreme Court of Appeals of West Virginia has noted that "simply because [] phrases are undefined does not create an ambiguity in the policy language, but merely requires a court to apply the plain, ordinary meaning to the[] phrases." *Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 900 (W. Va. 2009). *See generally ITC Invs. v. Emp'rs Reinsurance Corp.*, No. CV98115128, 2000 WL 1996233, at *7 (Conn. Super. Ct. Dec. 11, 2000) (unpublished) (collecting cases and observing that the "overwhelming weight of authority holds that" the failure to define claim in a "claims made" policy does not render the policy ambiguous). The plain and ordinary meaning of "claim" requires a demand for relief or damages. *See Black's Law Dictionary* 264 (8th ed. 2004) (defining "claim" as "1. The aggregate of operative facts giving rise to a right enforceable by a court . . . 2. The assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional . . . 3. A demand for money, property, or a legal remedy to which one asserts a right . .

10

. ."); *see also Webster's II New College Dictionary* 206 (1995) (defining claim to mean "[t]o demand or to ask for as one's own or one's due").

The record does not establish that the McNeelys asserted a claim against Dr. Soyoola during the Policy period. Dr. Soyoola points to the thank you note as evidence that a claim was made against him prior to August 2006. However, the note does not indicate that Oceanus could be become legally obligated to pay damages due to a medical act or omission committed by Dr. Soyoola, which falls under the Policy's definition of a claim. In fact, the note demonstrates the opposite—that a claim would not be filed. As Dr. Soyoola acknowledged in his deposition in the underlying medical malpractice action, he had no idea that the McNeelys would sue him. (*See* Dr. Soyoola Dep. [Docket 123-5], at 126:6-12 ("A: I didn't know, because after it she's been, the patient has been with us. She brings that baby every year. We celebrate with her every year, so I didn't know anything that was going to happen till— . . .towards the last year of my staying in Logan, when I got that suit."). In addition, the note does not contain a demand for relief or damages. Therefore, even under the most basic definition of "claim," this thank you note would not pass muster.

The only other evidence of a claim being asserted against Dr. Soyoola is an email from the McNeely's counsel to one of Dr. Soyoola's lawyers. The email, dated December 15, 2009, stated that the McNeelys had retained counsel and planned to file a malpractice suit against Dr. Soyoola due to his negligent delivery of their baby. (Ex. J, Email from Paul Farrell to Sam Fox (Dec. 15, 2009) [Docket 119], at 58). The email also asked Dr. Soyoola's counsel to "[p]lease advise to whom the Notice of Claim and Certificate of Merit should be directed." (*Id.*). In an email to Oceanus the next day, Dr. Soyoola's counsel indicated that he had informed Dr. Soyoola of the

11

claim. (Ex. K, Email from Sam Fox to Ron Kurtz (Dec. 16, 2009) [Docket 119], at 60). Although this email certainly would constitute a claim against Dr. Soyoola, it was not sent during the Policy period, which was August 1, 2004 to August 1, 2009. Therefore, because a claim was not asserted against Dr. Soyoola during the Policy period, there is no coverage for the McNeely claim.

### C. Dr. Soyoola's Remaining Claims

Dr. Soyoola has also alleged claims for unfair trade practices, false and deceptive practices, fraud, and punitive damages. Dr. Soyoola claims that Oceanus engaged in unfair trade practices and false and deceptive practices by failing to acknowledge or investigate Dr. Soyoola's claim for $1 million, refusing to settle the McNeely lawsuit for $1 million after liability became reasonably clear, and forcing Dr. Soyoola to file the instant action to obtain coverage under the Policy. (*See* Second Am. Compl. [Docket 115] ¶¶ 22-35). Dr. Soyoola alleges that Oceanus fraudulently "misrepresented . . . a material fact—that he had no coverage under the Policy for the McNeely claim and actions, even though Oceanus had calculated and knew that Dr. Soyoola had that coverage." (*Id.* ¶ 37). Finally, Dr. Soyoola asserts that Oceanus intentionally, willfully, and wantonly committed all of these acts. (*Id.* ¶¶ 42-51). It is clear that Dr. Soyoola's remaining claims all depend on the existence of coverage under the Policy. Because there is no coverage, Dr. Soyoola's remaining claims fail. Accordingly, I **GRANT** Oceanus's motion for summary judgment.

### IV. Conclusion

For the reasons discussed above, Oceanus's motion for summary judgment [Docket 117] is **GRANTED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

ENTER: June 19, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE