## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

EMMANUEL O. SOYOOLA,

                Plaintiff,

v.                                CIVIL ACTION NO.   2:13-cv-08907

OCEANUS INSURANCE COMPANY,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is the plaintiff's Motion for Summary Judgment [Docket 148] and Oceanus Insurance Company's ("Oceanus") Cross-Motion for Partial Summary Judgment [Docket 149]. For the reasons discussed below, the plaintiff's motion is **GRANTED** and Oceanus's motion is **DENIED**.

### I.      Background

This insurance dispute arises from Dr. Emmanuel O. Soyoola's allegedly negligent delivery of Jamie and Tracy McNeely's baby. On June 19, 2014, I granted Oceanus's motion for summary judgment. (*See* Mem. Op. & Order [Docket 135]). I found that the insurance policy was a claims-made-and-reported policy, which required that a claim be made against Dr. Soyoola and reported to Oceanus during the policy period. (*Id.* at 9-10). After reviewing the record, I found that no claim had been asserted against Dr. Soyoola and therefore there was no coverage available under the original policy. (*Id.* at 10-12).

However, Oceanus did not move for summary judgment on its two counterclaims for (1) rescission based on Dr. Soyoola's misrepresentations on policy renewals and (2) a declaration that Dr. Soyoola breached his duty to cooperate in his defense. Therefore, the Memorandum Opinion and Order granting summary judgment in Oceanus' favor did not address those counterclaims. On August 7, 2014, Dr. Soyoola moved for summary judgment on both counterclaims. On August 13, 2014, Oceanus filed a partial cross-motion for summary judgment on the second counterclaim—Dr. Soyoola's alleged breach of his duty to cooperate in his defense. As will be discussed more fully below, I **GRANT** Dr. Soyoola's motion for summary judgment and **DENY** Oceanus's partial cross-motion for summary judgment.

### A.  Factual Background

In 2005, Dr. Soyoola obtained medical malpractice insurance from Oceanus to cover his practice in West Virginia and Georgia. (*See* Dr. Soyoola Aff. [Docket 123-1] ¶ 6; Policy [Docket 119[1]], at 10). The policy is Policy Number 07-2006-015 ("the Policy"). (*Id.*). The Policy had a limit of $1 million per claim. (*Id.*). The Policy is a claims-made-and-reported policy, which requires that a claim be made against the insured and that the insured report that claim to the insurer during the policy period. (*See* Mem. Op. & Order [Docket 135], at 9).

According to Oceanus, the Policy was renewed by Dr. Soyoola on May 22, 2006, and June 19, 2007. (Counterclaim [Docket 116] ¶ 7; May 22, 2006 Renewal [Docket 116-5]; June 19, 2007 Renewal [Docket 116-6]). Dr. Soyoola alleged that prior to August 2006, the McNeelys's had made a claim against him. (*See* Mem. Op. & Order [Docket 135], at 3, 11). As evidence of the claim, Dr. Soyoola pointed to a thank-you note and photographs of the baby he had received from

---

[1] This docket entry contains multiple exhibits, each with their own pagination. The pages cited for this docket entry reflect the pagination of the entire entry rather than the individual exhibits.

the McNeelys. (*See id.*). The thank-you note stated "To: Dr. Soyoola[,] Thanks for everything you did to save my little boy[']s life[,] From: Jamie & Tracy McNeely." (Thank-You Note and Photographs [Docket 123-9]). Dr. Soyoola also asserted that he transmitted the note and the photographs to Fred Seilkop with Healthcare Professionals Services, Inc. ("HPSI"), who Dr. Soyoola alleges was Oceanus's insurance broker. (*See* Mem. Op. & Order [Docket 135], at 3). Dr. Soyoola also claimed he verbally notified Mr. Seilkop of the claim prior to August 2006. (*See id.*).

On August 1, 2009, Oceanus terminated the Policy. (*See id.* at 3). On the same day, Oceanus issued an Extended Reporting Endorsement, also identified as the Tail Policy. (Glyptis Aff. [Docket 149-1[2]] at 2; Pl.'s Mot. for Summ. J. [Docket 148], at 2). The Tail Policy provided for $250,000 in coverage, rather than the $1 million available under the Policy. (*See* Tail Policy [Docket 149-1], at 6). On December 15, 2009, counsel for the McNeelys sent an email to Dr. Soyoola's attorney in another medical malpractice case. (*See* Dec. 15, 2009 Email [Docket 119], at 58). The email notified Dr. Soyoola's counsel of the McNeelys's intent to sue Dr. Soyoola for his allegedly negligent delivery of their baby. (*See id.*). The next day, Dr. Soyoola's lawyer sent an email to Oceanus notifying it of the claim. (*See* Dec. 16, 2009 Email [Docket 119], at 60). The lawyer indicated in the email that he had informed Dr. Soyoola of the claim. (*See id.*).

**B. Procedural Background**

On April 4, 2013, Dr. Soyoola sued Oceanus in the Circuit Court of Kanawha County. (*See* Compl. [Docket 1-2]). The suit was timely removed to this court. (*See* Notice of Removal [Docket 1]). On December 11, 2013, I granted Dr. Soyoola leave to amend his complaint. (*See* Order [Docket 60]). I permitted Dr. Soyoola to assert five claims based on the Policy: (1) breach of

---

[2] This docket entry contains multiple exhibits, each with their own pagination. The pages cited for this docket entry reflect the pagination of the entire entry rather than the individual exhibits.

contract, (2) unfair trade practices, (3) false and deceptive practices, (4) fraud, and (5) punitive damages. (*See id*.). After several attempts to file an amended complaint that conformed to the December 11, 2013 Order, Dr. Soyoola moved to amend his complaint again on April 23, 2014, which I granted. (*See* Order [Docket 114]).

On May 17, 2014, Oceanus moved for summary judgment, asserting that coverage did not exist because Dr. Soyoola did not adhere to the Policy's notice provision. I granted Oceanus's motion because I found that the Policy was a claims-made-and-reported policy and that no claim was made against Dr. Soyoola during the Policy period. In particular, I reasoned that:

> Here, the Policy requires that a claim be asserted against the insured and that the insured report this claim to the insurer during the Policy period. As discussed above, the retroactive date of the Policy was August 1, 2004 and the Policy was terminated on August 1, 2009. (*See* Policy [Docket 119], at 10; Second Am. Compl. [Docket 115] ¶ 9). Therefore, for coverage to exist for the McNeely claim, the McNeelys must have asserted a claim against Dr. Soyoola and Dr. Soyoola must have reported that claim to Oceanus between August 1, 2004 and August 1, 2009.

> . . .

> The record does not establish that the McNeelys asserted a claim against Dr. Soyoola during the Policy period. Dr. Soyoola points to the thank you note as evidence that a claim was made against him prior to August 2006. However, the note does not indicate that Oceanus could [] become legally obligated to pay damages due to a medical act or omission committed by Dr. Soyoola, which falls under the Policy's definition of a claim. In fact, the note demonstrates the opposite—that a claim would not be filed. As Dr. Soyoola acknowledged in his deposition in the underlying medical malpractice action, he had no idea that the McNeelys would sue him. (*See* Dr. Soyoola Dep. [Docket 123-5], at 126:6-12 ("A: I didn't know, because after it she's been, the patient has been with us. She brings that baby every year. We celebrate with her every year, so I didn't know anything that was going to happen till— . . .towards the last year of my staying in Logan, when I got that suit."). In addition, the note does not contain a demand for relief or damages. Therefore, even under the most basic definition of "claim," this thank you note would not pass muster.

The only other evidence of a claim being asserted against Dr. Soyoola is an email from the McNeely's counsel to one of Dr. Soyoola's lawyers. The email, dated December 15, 2009, stated that the McNeelys had retained counsel and planned to file a malpractice suit against Dr. Soyoola due to his negligent delivery of their baby. (Ex. J, Email from Paul Farrell to Sam Fox (Dec. 15, 2009) [Docket 119], at 58). The email also asked Dr. Soyoola's counsel to "[p]lease advise to whom the Notice of Claim and Certificate of Merit should be directed." (*Id.*). In an email to Oceanus the next day, Dr. Soyoola's counsel indicated that he had informed Dr. Soyoola of the claim. (Ex. K, Email from Sam Fox to Ron Kurtz (Dec. 16, 2009) [Docket 119], at 60). Although this email certainly would constitute a claim against Dr. Soyoola, it was not sent during the Policy period, which was August 1, 2004 to August 1, 2009.

(Mem. Op. & Order [Docket 135], at 10-12). Because a claim was not asserted against Dr. Soyoola during the Policy period, I found there was no coverage under the Policy for the McNeely claim. (*Id.* at 12). My ruling only addressed the viability of coverage under the Policy, not the Tail Policy. (*See generally id.*).

On June 23, 2014, Oceanus moved for clarification that this Order also addressed Oceanus's two pending counterclaims: (1) rescission based on misrepresentation and (2) a declaration that Dr. Soyoola breached his duty to cooperate. (*See* Mot. by Oceanus to Clarify [Docket 139]). On July 31, 2014, I conducted a status conference on the pending counterclaims. On August 7, 2014, Dr. Soyoola moved for summary judgment on the two counterclaims. On August 13, 2014, Oceanus moved for partial summary judgment on its second counterclaim.

## II.    Legal Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the

light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

III.   **Discussion**

   **A. Counterclaim Count I – Rescission Based on Misrepresentation on Policy Renewals**

Oceanus seeks rescission of the Policy, including the Tail Policy, based on Dr. Soyoola's misrepresentations on Policy renewal applications. (*See* Counterclaim [Docket 116] ¶¶ 24-27). Oceanus claims that Dr. Soyoola filed an application to renew the Policy on May 22, 2006 and June 19, 2007. (*Id.* ¶ 7; May 22, 2006 Renewal [Docket 116-5]; June 19, 2007 Renewal [Docket 116-6]). In these applications, Dr. Soyoola allegedly answered "No" to the following question:

> Do you have knowledge of any incident, claim, potential claim or suit in which you may become involved, including without limitation, knowledge of any alleged injury arising out of the rendering or failing to render professional services which may give rise to a claim?

(May 22, 2006 Renewal [Docket 116-5]; June 19, 2007 Renewal [Docket 116-6]).

At summary judgment, Dr. Soyoola, citing the McNeelys's thank-you note, alleged that he was aware of a potential claim by the McNeelys prior to August 2006. (*See* Mem. Op. & Order [Docket 135], at 3, 11). However, Dr. Soyoola did not give notice of the McNeely claim to Oceanus until December 16, 2009, which was after the Policy had been renewed and after Oceanus issued the Tail Policy. (*See id.* at 11). Therefore, Oceanus argues that it is entitled to rescission of the policy and the Tail Policy based on Dr. Soyoola's material misrepresentations. *See Mass. Mut. Life Ins. Co. v. Jordan*, No. CIV.A. 3:10-0016, 2011 WL 1770435, at *3 (S.D. W. Va. May 9, 2011) (Chambers, C. J.).

However, I found that the thank-you note did not constitute a claim. (Mem. Op. & Order [Docket 135], at 11). I reasoned that "the note demonstrate[d] the opposite—that a claim would not be filed." (*Id.*). In light of my ruling, Oceanus concedes that if the McNeelys did not make a claim during the Policy period, his representations on the renewals could not be fraudulent. (*See* Def.'s Partial Opp'n to Pl. Mot. for Summ. J. & Cross-Mot. for Partial Summ. J. ("Def.'s Partial Opp'n & Cross-Mot.") [Docket 149], at 4-5). Accordingly, I **GRANT** Dr. Soyoola's motion for summary judgment with respect to Count I of Oceanus's counterclaim.

### B. Counterclaim Count II – Declaration that Dr. Soyoola Breached His Duty to Cooperate

Oceanus also seeks a declaration that it has no duty to defend and indemnify Dr. Soyoola because he breached his obligation to cooperate in his defense. (*See* Counterclaim [Docket 116] ¶¶

28-30). The parties do not dispute that Oceanus issued an Extended Reporting Endorsement on the Policy on August 1, 2009. (*See* Pl.'s Mot. for Summ. J. [Docket 148], at 2; Tail Policy [Docket 149-1], at 4-6). The Policy defines "endorsement" as "a form attached to the policy bearing language necessary to change the policy to fit special circumstances." (Policy [Docket 119], at 14). The endorsement states that it "is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company" and that "[a]ll remaining terms and conditions of the policy remain unchanged." (Tail Policy [Docket 149-1], at 4-5).

The Policy contains a cooperation clause. (Policy [Docket 119], at 16). The cooperation clause provides that:

> In order to protect the Named Insured's interest, or any person covered under this Policy, as well as the interest of the Company, the Named Insured must fully cooperate with the Company and the Named Insured's attorney throughout the pendency and review process of the claim. The Named Insured must provide the Company full disclosure of information, circumstances or evidence regarding a claim. Issues or information that arise at a later date may prejudice the Named Insured's defense. Cooperation includes, but is not limited to, attendance at meetings with attorneys or members of the Company, participation in enforcing any rights of subrogation, contribution or indemnity, giving evidence, meeting with experts and attendance at trials or settlement conferences.

(*Id.*).

Although the Policy contains a narrow list of what constitutes cooperation, courts have broadly construed cooperation provisions. *See* 3-20 Franklin D. Cordell, *New Appleman on Insurance Law Library Edition* § 20.02[2] (2012) ("The typical cooperation clause does not adequately convey the scope of the insured's legal responsibility to cooperate with the insurer because over time courts have elaborated on the duty to cooperate such that the duty now extends far beyond the list of specific tasks in the policy."). In addition, many courts hold that insureds have an implied duty at law to cooperate and to act in good faith. *See id.* ("In many jurisdictions,

the duty of good faith and fair dealing is imposed on both insurer and insured and the insured's duty to act in good faith toward the insurer has formed the basis for the expansion of the duty to cooperate. Even if not expressly required by the policy, an insured must exercise good faith in dealing with the insurer."); *see also* 14 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 199:3 (3rd ed. 2007) ("In instances where a policy does not include such a clause, one has been implied in law.").

In West Virginia, if an insured breaches his duty to cooperate, the policy may be voided. *See generally Bowyer by Bowyer v. Thomas*, 423 S.E.2d 906 (W. Va. 1992). However, "[b]efore an insurance policy will be voided because of the insured's failure to cooperate, such failure must be substantial and of such nature as to prejudice the insurer's rights." Syl. Pt. 1, *id.* at 907. In other words, a policy may not be voided for an inconsequential or technical breach of the duty to cooperate. As the West Virginia Supreme Court of Appeals stated in *Marcum v. State Auto. Mut. Ins. Co.*, "to constitute a breach of the co-operation provision of the contract, there must be a lack of co-operation by the assured in some material and substantial respect, and any formal, inconsequential or collusive lack of co-operation will be immaterial." 59 S.E.2d 433, 436 (W. Va. 1950) (quotations omitted).

"In addition to prejudice, the insurer must show that its insured willfully and intentionally violated the cooperation clause of the insurance policy before it can deny coverage." Syl. Pt. 2, *Bowyer*, 423 S.E.2d at 907. The insurer must also "exercise reasonable diligence in obtaining the insured's cooperation[.]" Syl. Pt. 3, *id*. The burden is on the insurer to show that the insured failed to cooperate. Syl. Pt. 4, *id.* In sum, to void a policy based on the insured's breach of the duty to cooperate, the insurer must establish: (1) substantial prejudice as a result of the breach, (2) the

breach was willful and intentional, and (3) the insurer diligently sought the insured's cooperation. *See generally id.*

Oceanus alleges that Dr. Soyoola breached his duty to cooperate in the following ways: (1) colluding with the McNeelys by pretending the McNeelys had made a claim against him while the Policy was in force, (2) impleading the insurance broker, HPSI, in the underlying medical malpractice action, and (3) Dr. Soyoola's initial refusal to allow his insurance lawyers to seek a continuance of the underlying medical malpractice action unless Oceanus agreed to pay $1 million for the McNeely claim.

### i. Oceanus Has Failed to Present Sufficient Evidence that Dr. Soyoola was Colluding with the McNeelys

Oceanus claims that Dr. Soyoola colluded with the McNeelys by "pretending that the McNeelys made a claim that [Dr. Soyoola] supposedly reported to his broker before the tail endorsement went into effect." (Def.'s Partial Opp'n & Cross-Mot. [Docket 149], at 5). Oceanus argues that an insured breaches his duty to cooperate "when he makes matters easier for a claimant." (*Id.*).

"An insured will be deemed to have breached a cooperation clause of a liability insurance policy where he or she appears to be assisting the claimant in the maintenance of his or her action." Russ & Segalla, *supra*, § 199:33. However, Dr. Soyoola's assertion that a claim had been made against him is insufficient evidence to raise an issue of material fact as to collusion. It is true that the McNeelys were willing to settle for $1 million. In addition, if a claim had been asserted against Dr. Soyoola during the Policy period, Dr. Soyoola would have $1 million in coverage for the McNeely claim. However, Oceanus has not presented evidence that there was any prearrangement between Dr. Soyoola and the McNeelys. Nor does this evidence give rise to the "appearance" that

Dr. Soyoola made this assertion to help the McNeelys. If every insured who disputed the amount of available coverage could be presumed to have colluded with a claimant, the insurer's duty to defend would be rendered a legal nullity. At best, the record shows that Dr. Soyoola made a demand for $1 million in coverage based on the misapprehension that a claim had been made against him. That is not evidence of collusion.

### ii. Oceanus Has Failed to Present Evidence That it Has Been Prejudiced by Dr. Soyoola's Impleader of HPSI

Oceanus argues that Dr. Soyoola breached his duty to cooperate by obtaining independent counsel and impleading HPSI, Dr. Soyoola's insurance broker, into the medical malpractice action. In the underlying state court action, Dr. Soyoola is suing HPSI for negligently failing to procure appropriate insurance coverage, for breach of contract, and for unfair trade practices. (*See generally* Third Party Def. Compl. [Docket 118-3]).

However, Oceanus has not put forth any evidence that it was substantially prejudiced by Dr. Soyoola's impleader of HPSI. The burden is on Oceanus to show that Dr. Soyoola's action substantially interfered with Oceanus's rights.

There are only a few cases in West Virginia dealing with the issue of prejudice. For example, in *Bower by Bower v. Thomas*, the West Virginia Supreme Court of Appeals found that

> [t]he insurer has presented no evidence that it was substantially prejudiced by Mr. Thomas's alleged uncooperation. In all the foregoing cases, the insurer had a judgment rendered against its insured and was asserting that the insured's failure to cooperate had prejudiced the company's ability to defend the lawsuit. Here, there has been no judgment rendered in the personal injury action against David Thomas, and, therefore, it is difficult to discern how the insurer has been substantially prejudiced. On the record before us, it is clear that the insurer failed to establish any right to declare the policy void because of the insured's failure to cooperate.

11

423 S.E.2d at 914. In *Marcum*, the court found that an insured's refusal to stay out of West Virginia to avoid service of process was not prejudicial because the insured could have been served through substitute process. 59 S.E.2d at 436-37.

Other courts have offered varying enunciations of the prejudice standard. *See, e.g.*, *Med. Assur. Co. v. Hellman*, 610 F.3d 371, 380 (7th Cir. 2010) (discussing Indiana law and noting that "to prove actual prejudice, the insurer must show somehow that the outcome of the underlying case would have been altered by the insured's cooperation"); *Med. Protective Co. v. Bubenik*, 594 F.3d 1047, 1053 (8th Cir. 2010) (applying Missouri law and stating that the insured need not show that it would have won the underlying case, but must prove that the insured's noncooperation was actually prejudicial); *Ramos v. Nw. Mut. Ins. Co.*, 336 So. 2d 71, 75 (Fla. 1976) ("Not every failure to cooperate will release the insurance company. Only that failure which constitutes a material breach and substantially prejudices the rights of the insurer in defense of the cause will release the insurer of its obligation to pay."); *Staples v. Allstate Ins. Co.*, 295 P.3d 201, 209 (Wash. 2013) ("A claim of actual prejudice requires affirmative proof of an advantage lost or disadvantage suffered as a result of the breach, which has an identifiable detrimental effect on the insurer's ability to evaluate or present its defenses to coverage or liability. . . . Prejudice will be presumed only in extreme cases." (quotations and citations omitted)).

Commentators have noted that "[g]enerally, an insurer will be found to have been prejudiced by its insured's lack of cooperation only when the insured's failure to cooperate substantially and adversely affects the insurer's ability to investigate the claim, defend the claim, settle the claim, or where the insured's misconduct substantially and adversely affects the outcome of the underlying litigation." 3 Deborah Etlinger & Gary M. Case, *Law and Practice of Insurance*

12

*Coverage Litigation* § 36:20 (2014). To be sure, "the prejudice standard is more favorable to insured persons and to accident victims." 16 *Williston on Contracts* § 49:106 (4th ed.) (quotations omitted). It requires "the insurer to prove that it has *been harmed* by the insured's uncooperative conduct." *Id.* (emphasis added) (quotations omitted).

Here, Oceanus argues it has been prejudiced because the addition of HPSI will inject issues of insurance coverage into the medical malpractice action. Oceanus alleges that the impleader will compromise "the defense and potentially taint[] the jury pool and finder of fact." (Counterclaim [Docket 116] ¶ 23). Presumably, Oceanus is arguing that these additional issues will make it difficult for Oceanus to defend and may distract the jury from the issues of the medical malpractice claim. However, Oceanus has only asserted the *possibility* that the addition of HPSI will interfere with its ability to defend. It has not shown any evidence of *actual* prejudice. At most, based on this evidence, a jury might conclude that Oceanus will be inconvenienced by having to litigate issues against an insurance broker. This is not enough. Accordingly, I conclude that Oceanus has failed to present evidence that it was prejudiced by the impleader of HPSI.

### iii. Oceanus Has Failed to Present Evidence That It Has Been Prejudiced by Dr. Soyoola's Initial Refusal to Grant a Continuance in the Underlying Medical Malpractice Action

Finally, Oceanus argues that Dr. Soyoola breached his duty to cooperate by refusing to permit a continuance of the underlying state court action on December 7, 2013. Oceanus attaches a letter from Dr. Soyoola's counsel in this action as proof of Dr. Soyoola's bad faith attempt to extract a $1 million settlement out of Oceanus, which Oceanus contends was substantially above the Tail Policy limits. The letter states in relevant part:

> This follows our telephone conversation late yesterday afternoon and my responsive letter of December 6, 2013 to your letter earlier that day requesting

13

that Dr. Soyoola consent to the filing of a Motion for Continuance of the McNeely Trial. . . . Paul Farrell has offered to settle all the McNeely claims against Dr. Soyoola if Oceanus pays now One Million Dollars ($1,000,000), the face amount of the original Oceanus/Soyoola Policy and the amount Dr. Soyoola asserts he is entitled to under his Oceanus Tail Coverage and West Virginia Law. Dr. Soyoola reiterates his earlier requests and demands that Oceanus pay Mr. Farrell and the McNeely's whatever is available under his Oceanus coverage to secure the full and complete satisfaction of the McNeely claims and the full and complete release of Dr. Soyoola from any personal exposure, liability or claims.

Please convey this letter to Oceanus as Dr. Soyoola's continuing demand under **Shamblin** that Oceanus protect Dr. Soyoola's interests and settle the McNeely claims now for One Million Dollars ($1,000,000). Dr. Soyoola and I are concerned that any motion for continuance by him, or any further delay by Oceanus in accepting the current McNeely Demand, will result in the withdrawal by the McNeely's of the current settlement demand and expose Dr. Soyoola to personal liability.

(Dec. 7, 2013 Letter [Docket 149-3]).

In response, Dr. Soyoola attached a letter, dated December 10, 2013, in which Dr. Soyoola gave his authorization for the continuance. (Dec. 10, 2013 Letter [Docket 150-1] ("This confirms our telephone conversation this afternoon. Dr. Soyoola authorizes and consents to your filing whatever Motions, including a Motion to Continue the Trial, you think advisable to protect Dr. Soyoola.")). Dr. Soyoola's short delay in authorizing a continuance is not evidence of breach of a duty to cooperate and is not evidence of substantial prejudice. Therefore, Oceanus has failed to present evidence that it was prejudiced by Dr. Soyoola's initial refusal to permit a continuance. Accordingly, Oceanus's cross-motion for partial summary judgment is **DENIED** and Dr. Soyoola's motion for summary judgment as to Count II is **GRANTED**.

IV.     Conclusion

For the reasons discussed above, the plaintiff's Motion for Summary Judgment [Docket 148] is **GRANTED** and Oceanus's Cross-Motion for Partial Summary Judgment [Docket 149] is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          August 25, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE